UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL NURSES UNITED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Case No. 12-2032 (RJL) |
| | ) |
| WASHINGTON HOSPITAL CENTER | ) |
| CORPORATION, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION
(July 9, 2013) (Dkts. ##7, 10)

Plaintiff, National Nurses United, AFL-CIO (plaintiff or "NNU") filed the instant action on December 18, 2012, seeking enforcement of an arbitration award pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. *See* Compl. [Dkt. #1]. On January 16, 2013, defendant Washington Hospital Center Corporation (defendant or "WHC") filed its answer and a counterclaim to vacate the arbitration award. *See* Def.'s Answer and Counterclaim [Dkt. #5]. On February 6, 2013, plaintiff moved to dismiss WHC's counterclaim and for summary judgment. *See* Pl.'s Mot. to Dismiss and Mot. Summ. J. [Dkt. #7]. Defendant filed a Motion for Summary Judgment on its Counterclaim on March 8, 2013. *See* Def.'s Mot. Summ. J. [Dkt. #10]. Upon consideration of the parties' pleadings, applicable law, and the

1

complete administrative record in this case, the Court DENIES defendant's Cross Motion for Summary Judgment and GRANTS plaintiff's Motion for Summary Judgment.

## BACKGROUND

NNU and WHC are signatories to a Collective Bargaining Agreement ("CBA") effective for the period of May 8, 2011 through November 15, 2014. *See* Ex. 1 to Compl. ("CBA") [Dkt. #1-1]. The CBA outlines a grievance procedure culminating in final and binding arbitration. *See id.* §§ 17–18; Pl.'s Statement of Material Facts As To Which There Is No Genuine Issue In Dispute (Pl.'s SOF) [Dkt. #7] ¶ 3. The CBA defines grievance as "any disagreement between the parties concerning any matter relating to wages, rates of pay, hours of employment or other conditions of employment, or any application or interpretations of the provisions of this Agreement." Pl.'s SOF ¶ 7.

The CBA also addresses WHC's ability to amend the health insurance plans provided to the nurses in the bargaining unit. *See* CBA § 26.7. Article 26.7 of the CBA states that WHC may make modifications to the plans with proper notice so long as the modifications "will not result in materially diminishing it as a whole (not merely individual aspects)." *Id.* There are limited exceptions, such as when a modification is "required by law." *Id.* Article 26.7 also provides that NNU may contest WHC's proposed modifications as a violation of the material diminishment standard. *Id.* If the parties cannot resolve the issue through discussion or contract negotiation on that issue, the next step is arbitration under Article 18 of the CBA. *Id.* In such a proceeding, "the

issue before the arbitrator shall be defined to be, and shall be limited to, whether or not the Employer has, by the modifications it voluntarily implemented, materially diminished the Health Plan as a whole." *Id.*

In the fall of 2011, WHC notified NNU of forthcoming modifications to the 2012 health insurance plan. Pl.'s SOF ¶ 5. The modifications affected deductibles and coinsurance maximums associated with non-MedStar providers, impacting approximately forty percent of nurses in the bargaining unit. *Id.* ¶¶ 11–12. NNU filed a grievance objecting to the changes under the material diminishment standard set forth in Article 26.7 of the CBA. *Id.* ¶ 8. The parties were unable to resolve the dispute through discussion and proceeded to arbitration pursuant to Articles 18 and 26.7 of the CBA. *See id.* ¶ 9. Arbitration hearings took place on February 13, 2012 and June 4, 2012. *Id.* ¶ 10.

On August 28, 2012, the arbitrator issued the first of two awards ("Initial Award"), finding that "by its modifications to the 2012 Health Insurance Plan, WHC materially diminished the Health Plan as a whole, in violation of 26.7 of the CBA." *See* Ex. 2 to Compl. ("Initial Award") [Dkt. #1-2] at 20. The Initial Award instructed WHC to "revert the increased deductibles and coinsurance maximums to their levels under the 2011 Plan" and the parties to "establish a process for reimbursement of claims for payments . . . which exceeded the deductibles and coinsurance maximums under the 2011

Plan." *Id.* at 23.  The arbitrator retained jurisdiction to oversee the parties' implementation of the agreed-upon remedy.  *Id.*

After the arbitrator issued the Initial Award, WHC and NNU entered negotiations to reach a settlement or agreement on a reimbursement process.  WHC's Statement of Material Facts As to Which There Is No Genuine Issue in Dispute ("Def.'s SOF") [Dkt. #10] ¶ 4.  WHC interpreted the arbitrator's instruction in the Initial Award to "revert the increased deductibles and coinsurance maximums to their level under the 2011 Plan" as an instruction to apply the 2011 Plan as a whole.  *Id.*  NNU, by contrast, viewed the arbitrator's instruction in the Initial Award as limited to the deductibles and coinsurance maximums.  *Id.*  Unable to reach a settlement or agreement on a reimbursement process, the parties returned to the arbitrator for a resolution.  *Id.* ¶ 5.  On November 21, 2012, the arbitrator issued a Supplemental Award which clarified the Initial Award.  Ex. 1 to Def.'s Answer and Counterclaim ("Supplemental Award") [Dkt. #5-1].  The Supplemental Award states that the Initial Award "did not, as WHC states, 'return the Plan to the 2011 status quo'" and "only addressed the changes made to the increased deductibles and coinsurance maximums for the 2012 Plan." *Id.* at 2.

On December 18, 2012, NNU filed the instant action to enforce the Initial Award. On January 16, 2013, less than ninety days after the arbitrator issued the Supplemental Award, WHC filed a counterclaim to vacate the Initial and Supplemental Awards.

## STANDARD OF REVIEW

An arbitrator's interpretation and application of a collective bargaining agreement is generally entitled to great deference. *Madison Hotel v. Hotel & Rest. Emps., Local 25, AFL-CIO*, 144 F.3d 855, 857 (D.C. Cir. 1998) (en banc). An arbitrator may not, however, "ignore the contract and dispense his own brand of industrial justice." *Id.* at 859 (citations and quotation marks omitted). The Court must vacate an arbitration award which does not "draw its essence" from the terms of the collective bargaining agreement. *Howard Univ. v. Metro. Campus Police Officer's Union*, 512 F.3d 716, 720 (D.C. Cir. 2008) (citing *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)). This is the case where an arbitrator's words reveal that he has gone beyond interpreting and applying the parties' agreement. *See Hay Adams Hotel L.L.C. v. Hotel & Rest. Emps., Local 25, Unite Here Int'l Union*, Civ. Action No. 06-968, 2007 WL 1378490, at *5 (D.D.C. May 9, 2007). The Court may not, however, "review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam); *see also United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987) ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.").

## ANALYSIS

Because WHC filed its counterclaim on January 16, 2013, less than ninety days after the arbitrator issued the Supplemental Award on November 21, 2012, NNU's Motion to Dismiss WHC's counterclaim as untimely must be denied. The arbitrator's Initial Award was not final and binding because it left the development of a remedy up to the parties and the arbitrator retained jurisdiction for the purpose of resolving any disputes in connection with that process. *See Am. Postal Workers' Union, AFL-CIO v. U.S. Postal Serv.*, 646 F. Supp. 2d 1, 3 (D.D.C. 2009) ("An arbitration award that postpones the determination of a remedy is not final and binding."). Therefore, the Initial Award did not trigger the ninety day deadline for filing a counterclaim pursuant to D.C. Code Section 16-4423. The arbitrator's Supplemental Award, however, was final and binding because it was "intended by the arbitrator to be his complete determination of every issue submitted to him." *Am. Postal Workers Union v. U.S. Postal Serv.*, 422 F. Supp. 2d 240, 246 (D.D.C. 2006) (quotations and citations omitted). The ninety day filing deadline, therefore, did not start running until the Supplemental Award was issued on November 21, 2012.

The arbitrator was within his authority and drawing from the essence of the CBA in making findings and concluding that "by its modifications to the 2012 Health Insurance Plan, WHC materially diminished the Health Plan as a whole, in violation of Section 26.7 of the CBA." Initial Award at 20. Defendant's arguments that the arbitrator's analysis

was too narrow (*i.e.*, not focused on the plan "as a whole") are not persuasive. *See* Def.'s Mot. Summ. J. at 8. The arbitrator considered a variety of factors including: changes in plan design for 2012, actuarial change in the value of the plan, cost savings to WHC, cost increases and other adverse effects to covered nurses, and the number of nurses adversely affected. *See* Initial Award at 4–6, 19–21. Specifically, the arbitrator found that forty percent of covered nurses would face a deductible nearly three times higher in 2012 as compared to 2011. *See id.* at 21.

The Supplemental Award cannot, as defendant contends, be read to say that the arbitrator did not consider the plan as a whole in crafting the Initial Award. When the arbitrator wrote in the Supplemental Award that the Initial Award "only addressed the changes made to the increased deductibles and coinsurance maximums for the 2012 plan," he was referring to the remedy and not the analysis of the Initial Award. *See* Supplemental Award at 3. In the Supplemental Award, the arbitrator simply clarified that the Initial Award called for returning the deductibles and coinsurance maximums to their 2011 Plan levels rather than returning all aspects of the proposed 2012 Plan to the 2011 status quo.

## CONCLUSION

For all of the foregoing reasons, the Court GRANTS plaintiff's Motion for Summary Judgment and DENIES defendant's Motion for Summary Judgment. An order consistent with this decision accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge